**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CLAYTON HAMILTON, CAMERON GRAY, AND CEDRIC BARNES, individually and on behalf of all those similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 25-cv-00312-SH |
| JAY DOYLE, in his official capacity as the chief Executive Officer of Service Oklahoma, | ) ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant's motion to dismiss, asserting sovereign immunity and arguing Plaintiffs have failed to state a claim upon which relief may be granted.[1] Defendant cannot invoke sovereign immunity, because the *Ex parte Young* exception applies. Based on the limited arguments presented by the parties, the Court further finds that Plaintiffs have stated a claim for relief, and the Court will not strike or dismiss Plaintiffs' class action allegations.

**Factual Background**

Taking the factual allegations in the complaint as true and viewing them in the light most favorable to the nonmoving party, Plaintiffs allege as follows:

Plaintiffs Clayton Hamilton ("Hamilton"), Cameron Gray ("Gray"), and Cedric Barnes ("Barnes") are individuals listed on the Oklahoma Sex Offender Registry. (Dkt. No. 30 ¶¶ 9–11, 14–16.) Pursuant to Okla. Stat. tit. 47, § 6-111(E), all three Plaintiffs have

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (Dkt. Nos. 13, 25, 34.)

1

been issued driver's licenses that bear the statutorily required label of "SEX OFFENDER." (*Id.* ¶¶ 9–11.) Because of the nature of their convictions,[2] all three Plaintiffs will be subject to the "SEX OFFENDER" license endorsement for the rest of their lives. (*Id.* ¶¶ 14–16.)

Plaintiffs need their driver's licenses for identification purposes in frequent face-to-face encounters, including when cashing a check, using a credit card, visiting a health clinic or pharmacy, purchasing tobacco or alcohol, obtaining a job, entering some public buildings, and traveling by air. (*Id.* ¶ 17.) When Plaintiffs provide their license in these circumstances, they frequently encounter suspicion, fear, and revulsion. (*Id.* ¶ 19.) Plaintiffs believe the "SEX OFFENDER" endorsement sends a message that they are dangerous and pose a threat to the public. (*Id.*) Plaintiffs fear, when they present their license, that they or their family will face distress, ridicule, differential treatment, and physical harm. (*Id.* ¶ 20.)

Defendant Jay Doyle ("Doyle") is the Chief Executive Officer of Service Oklahoma. (*Id.* ¶ 8.) Service Oklahoma is the entity responsible for the implementation and enforcement of section 6-111(E). (*Id.*) Plaintiffs seek a judgment declaring section 6-111(E) unconstitutional; enjoining Doyle from continuing to enforce the statute; and directing Doyle to immediately reissue Plaintiffs, at no cost, a license free of the "SEX OFFENDER" marking. (*Id.* at 9.[3])

---

[2] Hamilton is subject to the challenged statute due to a 2011 conviction for Rape, First Degree; Cameron, due to a 2000 conviction for Rape, Second Degree; and Barnes, due to a 2005 conviction for Lewd or Indecent Proposals/Acts to a child. (Dkt. No. 30 ¶¶ 14–16.)

[3] Page numbers refer to those in the court-provided header.

**Procedural Background**

Plaintiffs brought suit on June 23, 2025, and filed an amended complaint the next day.  (Dkt. Nos. 2, 11.)   In these complaints, Plaintiffs named as defendants the Commissioner of the Oklahoma Department of Public Safety and the Oklahoma Attorney General.[4]  (*See, e.g.,* Dkt. No. 11.)  The Commissioner and Attorney General moved to dismiss, arguing, among other things, that there was no causal connection between them and Plaintiffs' injury.  (Dkt. No. 23 at 5–6.)  Instead, the original defendants argued that "Service Oklahoma, a division of the Oklahoma Management and Enterprise Services ('OMES'), is the state agency responsible for enforcing 47 O.S. § 6-111(E) as made explicit by the statute's language."  (*Id.* at 6.)

Plaintiffs sought to file a second amended complaint "that substitutes the Executive Director as the proper Defendant, removes [the] organizational Plaintiffs; and clarifies the allegations to address concerns raised in the Motion to Dismiss."  (Dkt. No. 28 ¶ 3.)  The original defendants, represented by the Oklahoma Attorney General's Office, consented to the filing of a second amended complaint.  (*Id.* ¶ 5.)

The Court granted leave to amend, and Plaintiffs filed the current, at-issue second amended complaint.  (Dkt. Nos. 29–30.)  The complaint names as defendant Jay Doyle, in his official capacity of the Chief Executive Officer of Service Oklahoma, and it asserts a single claim under 42 U.S.C. § 1983 for compelled speech in violation of the First Amendment.  (Dkt. No. 30 ¶¶ 8, 30–33.)  Plaintiffs indicate they intend to seek certification of a class of "[a]ll persons who are currently or will in the future be subject

---

[4] The original complaints also included as plaintiffs the National Association for Rational Sexual Offense Laws and OK Voices Inc.  (*E.g.,* Dkt. No. 11.)  Those entities are no longer plaintiffs in this matter.

3

to Okla. Stat. Ann. tit. 47, § 6-111(E), which requires the written label of 'SEX OFFENDER' on state issued identification cards and driver's licenses." (*Id.* ¶ 22.)

Doyle, represented by the same attorneys from the Oklahoma Attorney General's Office, now moves to dismiss the current complaint. (Dkt. No. 34.) Essentially contradicting their prior filing, the attorneys now argue that Doyle is not the proper party under *Ex parte Young* and, therefore, he is entitled to assert the State's sovereign immunity. (*Id.* at 7–9.) Doyle also argues that the complaint fails to state a claim upon which relief may be granted, because it does not show "personal participation" by Doyle and fails to state that Plaintiffs "have actually been required to comply with the challenged statute[]." (*Id.* at 5–6.) Finally, Doyle argues that Plaintiffs have not satisfied the prerequisites for a class action under Fed. R. Civ. P. 23(a)–(b). (*Id.* at 3–5.)

## Analysis

### I.    Standard of Review

Eleventh Amendment immunity concerns the subject-matter jurisdiction of this Court. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2022). Doyle's motion to dismiss for immunity, therefore, falls under Fed. R. Civ. P. 12(b)(1), with Plaintiffs bearing the burden of showing that jurisdiction is proper. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (noting the party asserting jurisdiction bears the burden). Typically, a Rule 12(b)(1) motion takes one of two forms—(1) a <u>facial</u> attack based on the complaint's allegations or (2) a <u>factual</u> attack based on evidence outside the complaint. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). Here, Doyle makes a facial attack, relying entirely on the allegations the complaint. In a facial attack, the Court accepts the allegations in the complaint as true, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and applies the same standards as are applicable to a 12(b)(6)

motion, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). But the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citation modified). This is a "low bar." *Griffith v. El Paso Cnty.*, 129 F.4th 790, 815 (10th Cir. 2025).

## II.    Defendant Is Not Entitled to Eleventh Amendment Immunity

"The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity" and extends to suits against state officials in their official capacity.[5] *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). "But *Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law."

---

[5] The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This immunity extends as well to suits brought by citizens against their own state." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (citation modified).

*Anderson*, 119 F.4th at 736 (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). "The *Ex parte Young* exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). "To satisfy [the *Ex parte Young*] exception, the named state official must have some connection with the enforcement of the challenged statute—a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Frank v. Lee*, 84 F.4th 1119, 1132 (10th Cir. 2023) (citation modified); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) ("Defendants are not required to have a 'special connection' to the unconstitutional act or conduct.").

Doyle makes two arguments in support of his assertion of sovereign immunity. First, Doyle argues that, under *Will v. Michigan Department of State Police*, state agencies are not "persons" under 42 U.S.C. § 1983, and the Court lacks jurisdiction over him in his official capacity. (Dkt. No. 34 at 7 (citing 491 U.S. 58, 64 (1989).) This argument has been flatly rejected by the Tenth Circuit—

> While *Will* did hold state officials were not "persons" under § 1983 *for purposes of damages claims*, it expressly recognized, "Of course a state official in his or her official capacity, *when sued for injunctive relief*, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" 491 U.S. at 71 n.10 . . . (emphasis added) (citation omitted). Defendants seem to ignore this aspect of *Will*. In any case, . . . federal courts routinely consider the *Ex parte Young* doctrine in the context of § 1983 claims.

*Frank*, 84 F.4th at 1131 (citation modified, but emphasis in original).

Second, Doyle argues that he does not have "some connection" to enforcement of the challenged statute, because "Plaintiffs do not allege they have had to comply with the

6

challenged statute" and they "cannot simply rely on an official's general enforcement power to establish the requisite connection . . . ." (Dkt. No. 34 at 8.)  The first half of Doyle's argument is foreclosed by the facts alleged in the operative complaint.  Plaintiffs explicitly allege that they all hold driver's licenses with the "SEX OFFENDER" endorsement (Dkt. No. 30 ¶¶ 9–11), which shows that they have had to comply with the challenged statute to obtain a valid driver's license.  Plaintiffs also rely on more than a "general enforcement power" held by Doyle and show, as Doyle argues they must, that he has "a specific duty to enforce that statute and apply that duty." (Dkt. No 34 at 8–9).

As noted above, *Ex parte Young* requires the official-defendant to have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. *See also Hendrickson*, 992 F.3d at 965.  Courts deciding whether such a duty exists often look to the governing statutes. *See, e.g., Frank*, 84 F4th at 1132–33 (reviewing state statutes governing elections to determine whether Secretary of State and County Clerk had "some connection" with the enforcement of an electioneering statute).  Here, Plaintiffs challenge Okla. Stat. tit. 47, § 6-111(E).  That subsection provides,

> Service Oklahoma shall develop a procedure whereby a person applying for an original, renewal or replacement . . . driver license or identification card who is required to register as a convicted sex offender with the Department of Corrections pursuant to the provisions of the Sex Offenders Registration Act and who the Department of Corrections designates as an aggravated or habitual offender pursuant to subsection J of Section 584 of Title 57 of the Oklahoma Statutes shall be issued a license or card bearing the words "Sex Offender".

Okla. Stat. tit. 47, § 6-111(E)(1).  Service Oklahoma is a "separate and distinct" state agency created by statute, to assume the duties previously exercised by the Driver License Services Division of the Department of Public Safety, among others.  Okla. Stat. tit. 47, § 3-101(A)–(B)(1).  The Executive Director of Service Oklahoma is its chief executive

officer and acts for Service Oklahoma in all matters, including by supervising all activities of Service Oklahoma, prescribing its rules and regulations, and prescribing and providing suitable forms necessary to carry out laws Service Oklahoma enforces or administers.[6] *Id.* § 3-103(B); *see also id.* § 3-102(3) (defining "Director" as "the chief executive officer of Service Oklahoma").  Plaintiffs have alleged that Doyle is the chief executive officer of Service Oklahoma.  (Dkt. No. 30 ¶ 8.)  Plaintiffs have further alleged they received the "SEX OFFENDER" endorsement on their driver's licenses, which gives rise to a reasonable inference that Service Oklahoma has, in fact, promulgated procedures to enforce section 6-111(E).[7]  Plaintiffs have sufficiently alleged that Doyle has some connection with the enforcement of the "branding" requirement of section 6-111(E).  *Cf. Hendrickson*, 992 F.3d at 965 (finding state attorney general and governor not subject to *Ex parte Young*, when members of another agency enforced the statute).

Doyle does not dispute that the other elements of an *Ex parte Young* exception are present.  (Dkt. No. 34 at 7–9.)  *See also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) ("for the *Ex parte Young* exception to apply, plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing

---

[6] Plaintiffs challenge the "SEX OFFENDER" endorsement on their licenses, not their placement or categorization on the sex offender registry in the first place.  (Dkt. No. 30 at 8–9.)

[7] In their response brief, Plaintiffs also point to Service Oklahoma's Standard Operating Procedures, as revised on February 21, 2025.  (Dkt. No. 38 at 7 n.1.)  These procedures are no longer available at the hyperlink provided by Plaintiffs but are still available at https://web.archive.org/web/20250905124712/https://oklahoma.gov/content/dam/service-oklahoma/intranet/sops/c--driver-license---other-transactions/C.04%20-%20Sex%20Offender%20Processing.pdf [https://perma.cc/J7PK-R9ZM] (last visited June 16, 2026).  These procedures "explain how to issue a credential for customers required to register as a sex offender . . . ." *Id.* at 1.  The procedures further state that "Sex offenders that have committed a habitual / aggravated offense are required to have the words 'SEX OFFENDER' appear on their credential in red text." *Id.* at 2.

violation of federal law, and (3) seeking prospective relief").)  Doyle's motion to dismiss under the Eleventh Amendment will be denied.

### III.    Defendant's Rule 12(b)(6) Arguments Fail

In his opening brief, Doyle does not argue that Plaintiffs have failed to allege a constitutional violation.  Instead, he argues (1) that a § 1983 claim requires allegations of personal participation by Doyle, himself, in the violation of Plaintiffs' rights; and (2) that Plaintiffs "fail to state they have actually been required to comply with the challenged statutes." (Dkt. No. 34 at 5–6.)  The first argument cites law inapplicable to a claim under *Ex parte Young*, and the second argument misstates the allegations in the complaint.  Both are rejected.

First, the cases cited by Doyle for his initial argument are cases where damages claims have been brought against a defendant in his individual capacity.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (dismissing § 1983 claims where plaintiff "failed to sue the parties responsible for [his] beating" and did not allege any personal involvement by their supervisors, the defendants); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (noting that "[i]ndividual liability" must be based on personal involvement); *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996) (discussing the evidence needed to "prevail on a claim for damages" against individual defendants and rejecting liability simply due to an individual's role as a supervisor).  Doyle cites no case law indicating that "personal involvement" is required for an *Ex parte Young* claim, and this would contradict the test set out in Tenth Circuit precedent that requires the official-capacity defendant to have "some connection" with enforcement of a statute involving a "particular duty" and willingness to enforce it.  *Frank*, 84 F.4th at 1132; *see also D.T.M.*

*ex rel. McCartney v. Cansler*, 382 F. App'x 334, 338 (4th Cir. 2010) (per curiam);[8] *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (stating, in § 1983 case, "Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action."). There is no support for Doyle's apparent argument that each Plaintiff must track down the individual worker who put the "SEX OFFENDER" stamp on his license and ask that such exact person be required to remove the stamp.

Second, Doyle misstates the record when he asserts "Plaintiffs fail to state they have actually been required to comply with the challenged statute[]" and "simply state they 'will be subject to the statute challenged.'" (Dkt. No. 34 at 6.) As noted above, each Plaintiff has specifically alleged that he "holds a driver's license with the 'SEX OFFENDER' branding," and this endorsement will apply to any renewals of that license. (Dkt. No. 30 ¶¶ 9–11, 18.) The reasonable inference from these allegations is that Plaintiffs have been required to have a license with the "SEX OFFENDER" stamp, or no license at all.

The two arguments above are the only arguments made by Doyle for dismissal under Rule 12(b)(6) of Plaintiff's substantive individual claims. Having rejected these arguments, the Court denies his motion to dismiss under that rule.[9]

---

[8] In *DTM*, the Fourth Circuit found the defendant's "status as the official responsible for administering" a state's Medicaid program was sufficient to support the application of *Ex parte Young* in a case brought under § 1983. 382 F. App'x at 338. In so doing, the court quoted the Seventh Circuit for the proposition that "where injunctive, as opposed to monetary relief is sought, no 'direct and personal' involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court." *Id.* (citation modified) (quoting *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985)).

[9] In his reply brief, Doyle pivots, appearing to argue that the required "SEX OFFENDER" endorsement is a "neutral identifier" and that "Plaintiffs' fundamental expression is not

## IV.    The Court Will Not Deny Class Certification at This Time

Finally, Doyle asks the court to "deny" class certification, arguing Plaintiffs have failed to meet their "burden" of showing that the requirements of Fed. R. Civ. P. 23(a) and (b) have been satisfied.  (Dkt. No. 34 at 3–5.)  Motions by a defendant "to defeat certification prior to the completion of discovery are generally regarded with disfavor." *Newberg and Rubenstein on Class Actions* ("Newberg") § 7:22 (6th ed.).  When faced with an early motion to deny certification, some courts have treated the requests as a motion to strike under Rule 12(f), while others apply a Rule 12(b)(6) standard.  *Id.*  As Doyle styled his motion as one under Rule 12(b)(6), the Court will assume that standard applies.

Lower courts faced with such a motion generally address "whether the complaint has stated a plausible entitlement to relief."[10]  *Colton v. Sandridge Expl. & Prod., LLC*, No. CIV-22-00986-JD, 2025 WL 1387798, at *3 (W.D. Okla. May 13, 2025) (citation

---

limited."  (Dkt. No. 39 at 4.)  Arguments raised for the first time in reply briefs are generally waived.  *Cf. United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (referring to appellate briefing).  In any event, in support of this new argument, Doyle cites only to a case involving the First Amendment right to engage in anonymous speech. *See Doe v. Shurtleff*, 628 F.3d 1217, 1222–23 (10th Cir. 2010).  Doyle does not tie this case to, or even address, the elements of a First Amendment claim for compelled speech, namely "(1) speech; (2) to which [plaintiff] objects; that is (3) compelled by some governmental action."  *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015). Plaintiffs have alleged that they are required to display on their driver's license—a document that must be presented repeatedly throughout modern life—a message that they are a "SEX OFFENDER"; that this communicates they are dangerous and pose a threat to the public; and that this is speech to which they object.  Doyle has failed to make an understandable argument supporting an assertion that the individual Plaintiffs have failed to state a claim upon which relief may be granted.

[10] Some courts require the defendant to "demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0040 JB/KBM, 2016 WL 5376325, at *7 (D.N.M. Aug. 27, 2016).  As Newberg notes, however, since *Twombly*, courts have tended to apply the "plausibility" standard to this inquiry.  3 Newberg § 7:22.

modified).    Here, Doyle faults Plaintiffs' showing as to each of the Rule 23(a) prerequisites, as well as their entitlement to relief under Rule 23(b)(2).  The Court will address each in turn, relying on the allegations in the complaint and any reasonable inferences, focusing on whether Plaintiffs has stated a plausible basis for class certification.

First, certification requires numerosity.  Rule 23 requires a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs allege the class is numerous, because there are approximately 6,758 individuals currently on Oklahoma's sex offender registry, most of whom have been convicted of "aggravated or habitual offender" offenses that would require their state driver's license (or identification card) to carry the "SEX OFFENDER" endorsement.  (Dkt. No. 30 ¶ 23.)  Doyle argues this is insufficient, because Plaintiffs have not given the exact number of those 6,758 individuals who have been categorized as "aggravated or habitual offenders."  (Dkt. No. 34 at 3–4.)  That is more than is required at the pleading stage.  Even if "most" means only 51% of the registrants are the "aggravated or habitual offenders," this still translates into a class of over 3,400 individuals.  The identity of these persons should be easy to ascertain, given the categorical, objective criteria of section 6-111(E).

Second, there must be commonality.  Rule 23 requires there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Doyle argues commonality is lacking because class members "have committed different crimes."  (Dkt. No. 34 at 4.)  Doyle does not explain how this deprives the class

of common issues, when—as pled—those issues center on the constitutionality of section 6-111. If the class is certified as requested (including all those subject to the "SEX OFFENDER" endorsement), the nature of the underlying conviction would not appear to affect the commonality of these issues.

Third, class certification requires typicality and adequacy. Rule 23 requires the representative plaintiff(s)' claims to be typical of the claims of the class and that the representative plaintiff(s) will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3)–(4). Doyle again argues these requirements are lacking, because "[n]ot all sex offenders have been convicted of the same crime." (Dkt. No. 34 at 4.) Doyle, again, does not explain how this distinction robs the current Plaintiffs of their adequacy or makes their claims not typical of the class as a whole. *See, e.g., Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) ("In order to protect the class's interest adequately and fairly, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (citation modified)).

Finally, Rule 26(b)(2) requires "the party opposing the class"—here Doyle—to have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 26(b)(2). Doyle argues this requirement is not satisfied, because "Defendant has not acted or refused to act even against these Plaintiffs" (Dkt. No. 34 at 5), apparently returning to his no "personal involvement" arguments. But the complaint has alleged that Doyle is the chief executive officer of Service Oklahoma, the entity responsible for enforcing and implementing section 6-111(E). (Dkt. No. 30 ¶ 8.) All three of the named Plaintiffs fall within the categories listed in section 6-111(E) and have been issued driver's licenses with the "SEX OFFENDER" endorsement. (*E.g. id.* ¶¶ 9–11.)

From this, it is reasonable to infer that Doyle—in his official capacity as the director of Service Oklahoma—has acted against Plaintiffs on grounds that generally apply to the proposed class and that any remedy will be appropriate as to the whole class.[11]  *See Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004) (noting, under Rule 23(b)(2), the court "was required to consider whether the remedies the class sought applied equally to all cases pending within the class" (citation modified)).

Overall, from the allegations in the complaint, there is a plausible basis for class certification.  The Court will not prematurely dismiss the class "claims" or strike the class allegations from the complaint.  The issue of whether to certify a class will be left to a determination at an early practicable time following an appropriate period of discovery.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's *Motion to Dismiss* (Dkt. No. 34) is DENIED.

ORDERED this 18th day of June, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[11] For the first time in his reply, Doyle also argues that any potential class members "not holding a license do not have standing [to] challenge the statute because they do not have an injury and should be dismissed."  (Dkt. No. 39 at 2.)  This argument does not apply to the named Plaintiffs, who hold such licenses.  To the extent Doyle's arguments are correct, this issue can be addressed when class certification is briefed after discovery.